Stadtmauer & Associates
Marc A. Stadtmauer (MS 5863)
230 Park Avenue
New York, New York 10169
(212) 986-6200

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SUSAN FLANNIGAN,

                  Plaintiff,

        - against -

VULCAN POWER GROUP, L.L.C.,
AJAX CAPITAL, L.L.C.,
FORD F. GRAHAM and KEVIN C. DAVIS,

                  Defendants.
------------------------------------------------------------X

Docket No. 09

**COMPLAINT**

**JURY TRIAL DEMANDED**



09 CV 8473

       Plaintiff, Susan Flannigan, by her attorneys, Stadtmauer & Associates, complaining of the Defendants, alleges as follows:

### INTRODUCTION

       1.    This action is brought, in part, as a supplemental proceeding to <u>Flannigan v. Vulcan Capital Management, Inc., et al.</u>, Docket No. 05 Civ. 7404, to collect the Judgment entered in plaintiff's favor therein (the First and Second Cause of Action), and, in part, to address new claims against the individual defendants for their liability to plaintiff under New York's Labor Law (the Third and Fourth Causes of Action.)

### THE PARTIES

       2.    Plaintiff, Susan Flannigan, is a natural person and a resident, citizen, and domiciliary of the State of Texas and the United States of America, currently residing at 1901 Post Oak Blvd., Houston, Texas 77056.

       3.    At all times hereinafter mentioned, defendant, VULCAN POWER GROUP, L.L.C.

1

(hereinafter "VPG"), was, and still is, a limited liability company incorporated under the laws of the State of Delaware, which, at all relevant times, has and had a principal place of business in the State of New York, at 150 East 52nd Street, 11th Floor, New York, New York 10022.

4.     At all times hereinafter mentioned, defendant, AJAX CAPITAL, L.L.C. (hereinafter "Ajax Capital"), was, and still is, a limited liability company incorporated under the laws of the State of Delaware, which, at all relevant times, has and had a principal place of business in the State of New York, at 150 East 52nd Street, 11th Floor, New York, New York 10022.

5.     Defendant, Ford F. Graham ("Graham"), is a natural person and a resident, citizen, and domiciliary of the State of New Jersey and the United States of America, currently residing at 260 Prospect Avenue, Princeton, NJ 08540 and with a principal place of business in the State of New York, at 150 East 52nd Street, 11th Floor, New York, New York 10022.

6.     Defendant, Kevin C. Davis ("Davis"), is a natural person and a resident, citizen, and domiciliary of the State of New York and the United States of America, currently residing at 39 West 68th Street, New York, NY 10023 and with a principal place of business in the State of New York, at 150 East 52nd Street, 11th Floor, New York, New York 10022.

7.     Defendants were and are the owners, managers, officers, directors and/or agents of Vulcan Capital Management, Inc. ("VCMI") and Vulcan Advanced Mobile Power Systems, LLC, which is also sometimes known as Vulcan AMPS, LLC (hereinafter "VAMPS"), which were and are Delaware entities with offices at 150 East 52nd Street, 11th Floor, New York, New York 10022.

8.     VCMI and VAMPS were or are in the business of manufacturing and selling mobile electrical power plants.

9.     The individual defendants were and are officers of VCMI and Managers of VAMPS, responsible for managing all of the day-to-day operations of VCMI and VAMPS.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction to entertain the instant matter by virtue of the provisions of Title 28, United States Code, Section 1332(a)(3), in that there is complete diversity

of citizenship among the parties because: (a) the plaintiff is a resident, citizen, and domiciliary of the State of Texas, (b) the corporate defendants are both Delaware Limited Liability Companies with primary places of business in the State of New York, and (c) the individual defendants are residents, citizens, and domiciliaries of New Jersey and New York, respectively. The matter in controversy, exclusive of costs and interest, exceeds the sum or value of One Hundred Thousand Dollars ($100,000.00).

11. Venue is proper in this District by virtue of the provisions of Title 28, United States Code, Section 1391(a)(1), in that the defendants' principal place of business is in the Southern District of New York and by virtue of the provisions of Title 28, United States Code, Section 1391(a)(2), in that a substantial part of the events or omissions giving rise to this claim occurred in the Southern District of New York.

### PLAINTIFF'S COMMISSION ARRANGEMENT

12. In or about April 2003, Graham and Davis met with plaintiff and asked for her help in brokering the sale of mobile power plants, including an existing mobile power plant which defendants had purchased from the Enron bankruptcy estate.

13. In or about August 2003, plaintiff contacted Graham and Davis and informed them that she had made initial high-level contacts with Washington Group International ("WGI") for a potentially substantial order by WGI of mobile power plants, which would, in turn, supply the units to the United States Government for purposes of restoring electrical power in Iraq.

14. On October 7, 2003, Davis sent plaintiff an email agreeing to pay plaintiff "4% of the sales price of these AMPS units. . . ."

15. Plaintiff thereafter became employed by VCMI, VAMPS, Graham and/or Davis.

### THE $22 MILLION WGI TRANSACTION and THE FRAUDULENT TRANSFER

16. On or about October 17, 2003, VAMPS entered into a Purchase Order contract with WGI pursuant to which VAMPS agreed to sell and WGI agreed to buy two "Vulcan AMPS" power plant units supposedly newly manufactured by VAMPS and six used units manufactured by General

Electric for a total sales price of $102,832,000.00 (the "Purchase Order").  A copy of this Purchase Order is attached hereto as Exhibit A.

17. At that time, VAMPS has possession of only one "AMPS" unit, which was at best 70% complete, and was relying on the down-payment from WGI pursuant to the Purchase Order to fulfill its obligations under the Purchase Order, including (a) completing the one "AMPS" unit that was on hand, (b) constructing a second "AMPS" unit, to the extent that was even possible in the tight time frame contemplated by the Purchase Order, and (c) acquiring six used General Electric units.

18. Thereafter, defendant Graham (on behalf of VAMPS) wrote two letters to WGI directing WGI to wire the funds under that Purchase Order–not to VAMPS, the signatory to that Purchase Order–but rather to defendant VPG–the corporate parent of VAMPS–allegedly "for benefit of Vulcan AMPS LLC."  Copies of these letters, dated October 30, 2003, are attached hereto as Exhibit B.

19. Pursuant to Graham's instructions, on October 17 and November 3, 2003, WGI wired a total of $22.281 million into VPG's Citibank Account No. 41359108.  A copy of the relevant bank statement is attached hereto as Exhibit C.

20. VAMPS has, and had, no ownership interest in VPG's Citibank Account No. 41359108.

21. As a result of this transfer of the proceeds of that Purchase Order to VPG, VAMPS was left insolvent and without sufficient assets to pay plaintiff or perform its obligations under the Purchase Order.  VAMPS and its creditors (including plaintiff), therefore, were left at the complete mercy of VPG.

22. Subsequently, WGI issued two Change Orders to VAMPS, substantially reducing the amount of the Purchase Order on the ground that VAMPS was not able to perform its obligations under the Purchase Order.

23. VAMPS, VCMI and/or defendants refused to accept one or both of these Change Orders and refused to refund any of the funds WGI had paid to VPG.

24. Thereafter, WGI commenced an arbitration against defendants before the American Arbitration Association, under File No. 13 Y 181 01077 04, seeking, *inter alia*, a partial refund.

25. This arbitration was settled and discontinued by Settlement Agreement dated December 20, 2004. As part of the settlement arrangements, WGI abandoned its claim for a refund of any of the $22,281,000.00 and further agreed to "pay Vulcan [an additional] $200,000 for legal costs incurred to date. Vulcan agree[d] to submit an invoice, with supporting information, demonstrating that these costs were incurred by Vulcan." Vulcan also agreed to "indemnify [WGI] and hold them harmless from any civil judgment or penalties assessed against [WGI] for false statements or false claims that may be attributed to Vulcan's invoices." A copy of the Settlement Agreement is attached hereto as Exhibit D (see Paragraphs 5 & 8 on pages 2 and 3 of the December 20, 2004 Letter Agreement).

26. Pursuant to the terms of plaintiff's employment, therefore, plaintiff was entitled to $891,240.00, representing a 4% commission on the $22,281,000.00 paid by WGI.

27. In or about March 2004, VCMI and VAMPS paid plaintiff $125,000.00 with respect to this commission, but, despite due demand, has refused and failed to pay the balance of at least $766,240.00.

## DEMAND LETTERS

28. By letter dated November 23, 2004, plaintiff demanded, *inter alia*, payment of the commissions owed to her from the WGI transaction.

29. By letter dated December 9, 2004, VAMPS conceded that plaintiff was owed commission but refused to pay plaintiff on the ground that it had not yet received "complete payment from WGI."

30. By letter dated March 16, 2005, titled "[Business Corporation Law] §630 Notice of Personal Liability and Demand Letter," plaintiff, through counsel, provided with the specific Notice of personal liability required by Section 630(a) of New York's Business Corporation Law and again demanded, *inter alia*, payment of the commission owed to her. A copy of this letter, together with

proof of service, is attached hereto as Exhibit E.

31.     By letter dated March 23, 2005, defendants, through their counsel, against conceded that plaintiff was owed "partial" commission but refused to pay without any justification.

## PREVIOUS LAWSUIT

32.     On or about August 22, 2005, Flannigan commenced a lawsuit against VCMI and VAMPS in the United States District Court, Southern District of New York, entitled <u>Susan Flannigan v. Vulcan Capital Management, Inc., et al.</u>, under Docket No. 05 Civ. 7404.

33.     On the eve of trial, this lawsuit was settled under the terms of a Settlement Agreement and Release dated April 27, 2009 (the "Settlement Agreement").

34.     Pursuant to the terms of this Settlement Agreement, VCMI and VAMPS paid plaintiff $30,000.00 between April and August 2009 with respect to this commission, but, despite due demand and an opportunity to cure, has refused and failed to pay the balance, which is currently due and owing.

35.     Upon the failure of VCMI and VAMPS to make complete payment as called for in the Settlement Agreement, a Judgment was entered against VCMI and VAMPS on or about September 10, 2009 in the amount of $470,890.55.  A copy of this Judgment is attached hereto as Exhibit F.

36.     Flannigan then made efforts to collect on this Judgment by service of an Execution on the Office of the Sheriff in New York County.  This Execution was returned "unsatisfied" to Flannigan's counsel by letter dated September 29, 2009.  A copy of the "Returned Case" notification is attached hereto as Exhibit G.

16.     This action was commenced within ninety days after September 29, 2009, the date of the return of the unsatisfied execution against VAMPS and VCMI, and is therefore timely pursuant to Business Corporation Law ("BCL") §630(a).

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST VPG
FRAUDULENT TRANSFER PURSUANT TO
DEBTOR AND CREDITOR LAW §273, 274, 275 and/or 276**

37. Defendants' direction to WGI to wire the proceeds of the Purchase Order to VPG, and not VAMPS, left VAMPS in a position where the value of its assets were less than the amount that would be required to pay its liability to plaintiff as well and to pay for the equipment and services required to perform under the Purchase Order.

38. For example, as a consequence of the fact that the proceeds of the Purchase Order were diverted, VAMPS–*in addition to not paying plaintiff her commission*–was also unable to afford: (a) security services for its employees in Iraq (see Sabre International Security v. Vulcan Capital Management, Supreme Court of the State of New York, New York County, Index No. 601305/07); (b) life insurance premiums for its employees in Iraq (see American Home Assurance Company v. Vulcan Advanced Mobile Power Systems, Supreme Court of the State of New York, New York County, Index No. 11211/08); (c) to pay its subcontractors to repair the AMPS unit that was delivered to WGI for use in Iraq (see, e.g., Plainville Electrical Products Co. Inc. v. Vulcan Advanced Mobile Power Systems, et. al., Connecticut District Court, Docket No. 2009cv00447); (d) to acquire sufficient used General Electric units as called for in the Purchase Order (See Defense Contract Audit Agency, Audit Report No. 4261-2004W21000001 at p. 11: "Our audit disclosed that [WGI] made the determination that Vulcan AMPS could not provide the anticipated eight turbines and it subsequently issued a purchase order to General Electric (GE) for six turbines.", a copy of which is attached hereto as Exhibit H); and/or (e) the parts and services necessary to build the second AMPS unit called for under the Purchase Order.

39. As a result, at the time that VAMPS diverted the proceeds of the WGI Purchase Order to VPG, VAMPS was "insolvent" within the meaning of Debtor and Creditor Law §271(1) because it rendered VAMPS unable to pay its "probable liability on [its] existing debts as they become absolute and matured."

40. At the time that VAMPS diverted the proceeds of the WGI Purchase Order to VPG,

(a) VAMPS did not owe VPG anywhere near $22.281 million and (b) VAMPS did not receive any property from VPG for diverting the proceeds of the WGI Purchase Order to VPG.

41.     As a result, at the time that VAMPS diverted the proceeds of the WGI Purchase Order to VPG, VAMPS did not receive "fair consideration" for such diversion within the meaning of Debtor and Creditor Law §272.

42.     At the time that VAMPS diverted the proceeds of the WGI Purchase Order to VPG, VAMPS knew, or should have known, that it would incur debts to plaintiff, and others, beyond its ability to pay as they mature.

43.     This diversion of the proceeds of the WGI Purchase Order to VPG by VAMPS was intentionally done by VAMPS to shield the proceeds of the WGI Purchase Order from creditors, including plaintiff.

44.     Because the diverting of the proceeds of the WGI Purchase Order to VPG by VAMPS was without fair consideration and rendered VAMPS insolvent, this diversion was a "fraudulent transfer" within the meaning of Debtor and Creditor Law §273.

45.     Because the diverting of the proceeds of the WGI Purchase Order to VPG by VAMPS was without fair consideration and left VAMPS with unreasonably small capital, this diversion was a "fraudulent transfer" within the meaning of Debtor and Creditor Law §274.

46.     Because the diverting of the proceeds of the WGI Purchase Order to VPG by VAMPS was without fair consideration and was done at a time when VAMP knew, or should have known, that it would incur debts to plaintiff and others beyond its ability to pay as they mature, this diversion was a "fraudulent transfer" within the meaning of Debtor and Creditor Law §275.

47.     Because the diverting of the proceeds of the WGI Purchase Order to VPG by VAMPS was done in an effort to shield the proceeds of the WGI Purchase Order from creditors, including plaintiff, it was made with actual intent to hinder, delay or defraud plaintiff and other present or future creditors.  This diversion, therefore, was a "fraudulent transfer" within the meaning of Debtor and Creditor Law §276.

48. Because the diverting of the proceeds of the WGI Purchase Order to VPG by VAMPS was a fraudulent transfer, this court should enter a judgment against VPG, pursuant to (a) Debtor and Creditor Law §278(1)(a), setting aside the $22.281 million conveyance, and/or (b) Debtor and Creditor Law §278(1)(b), disregarding the conveyance in the amount of $470,890.55 (plus interest), the extent necessary to satisfy plaintiff's claim, together with attorneys' fees pursuant to Debtor and Creditor Law §276-a, interest from September 10, 2009, together with the costs of this action.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST VPG, AJAX CAPITAL, GRAHAM, and DAVIS LIABILITY PURSUANT TO BCL §630(a)

49. From October 2003 through December 2004, Graham and/or a trust that he controlled, was one of the ten largest shareholders of VCMI, as determined by the fair value of his beneficial interest during that time frame. See document attached hereto as Exhibit I.

50. From October 2003 through December 2004, Davis was one of the ten largest shareholders of VCMI, as determined by the fair value of his beneficial interest during that time frame. See document attached hereto as Exhibit I.

51. From October 2003 through December 2004, VPG was one of the ten largest shareholders, or holders of membership interest, of VAMPS, as determined by the fair value of its beneficial interest during that time frame. See document attached hereto as Exhibit I.

52. From October 2003 through December 2004, Ajax Capital was one of the ten largest shareholders, or holders of membership interest, of VAMPS, as determined by the fair value of its beneficial interest during that time frame. See document attached hereto as Exhibit I.

53. On or about March 16, 2005, plaintiff's counsel sent VPG, Ajax Capital, Graham and Davis a letter stating, in pertinent part, that:

> "Pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that the undersigned intends to enforce your personal liability, as one of the ten largest shareholders of Vulcan Capital Management, Inc. and/or Vulcan Advanced Mobile Power Systems, LLC (a/k/a Vulcan AMPS, LLC) and to charge you with indebtedness of said corporation to Ms. Flannigan for services performed for, and sales commission owed by, the said corporations consisting of sales commission as a broker,

employee and/or sales person of the said corporations between October 2003 and December 2004 . . . ."

A copy of this letter is attached hereto as Exhibit E.

54. This letter was received by VPG on or about March 18, 2005 (see signed Return Receipt attached as part of Exhibit E).

55. This letter was received by Ajax Capital on or about March 18, 2005 (see signed Return Receipt attached as part of Exhibit E).

56. This letter was received by Davis on or about March 18, 2005 (see signed Return Receipt attached as part of Exhibit E).

57. This letter was received by Graham on or about April 12, 2005 (see Federal Express receipt attached as part of Exhibit E).

58. This letter was sent on Flannigan's behalf to Graham, Davis, VPG and Ajax Capital within one hundred and eighty days after termination of Flannigan's employment with VAMPS, VCMI, and/or defendants.

59. The unpaid commissions which formed the basis for Flannigan's lawsuit VAMPS and VCMI are "compensation and benefits payable by an employer to or for the account of the employee for personal services rendered by such employee" within the meaning of BCL §630(b).

60. Flannigan complied with the prerequisites of BCL §630 in all respects.

61. Because the execution was returned unsatisfied, pursuant to BCL §630(a), Graham, Davis, VPG and Ajax Capital owe Flannigan the sum of $470,890.55, plus interest from September 10, 2009, together with court costs, and disbursements.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST GRAHAM LIABILITY PURSUANT TO LABOR LAW §191(1)(c), §191(3) and §198(1-a)

62. At all relevant times, Graham, as an Officer of VCMI and Manager of VAMPS, had the power to hire and fire employees, including Flannigan.

63. At all relevant times, Graham, as an Officer of VCMI and Manager of VAMPS, supervised and controlled the conditions of employment, including those of Flannigan.

64. At all relevant times, Graham, as an Officer of VCMI and Manager of VAMPS, determined rates and methods of payment, including those of Flannigan.

65. At all relevant times, Graham, as an Officer of VCMI and Manager of VAMPS, maintained–either directly or indirectly–employment records, including those of Flannigan.

66. Graham, as an Officer of VCMI and Manager of VAMPS, willfully made the decision to refuse to pay Flannigan the commissions that she earned from November 2003 through December 2004.

67. At all relevant times, therefore, Graham was plaintiff's "employer" within the meaning of §190(3) of the Labor Law in that he (a) had the power to hire and fire employees, (ii) supervised and controlled the conditions of employment, (iii) determined rates and methods of payment, and (iv) maintained employment records.  See, e.g., Chu Chung v. The New Silver Palace Restaurant, Inc., 272 F. Supp. 2d 314, 318–19 (SDNY 2003).

68. At all relevant times, therefore, Flannigan was an "employee" and "commission salesman" employed, *inter alia*, by Graham within the meaning of §190(2) and §190(6) of the Labor Law.

69. The commission owed to Flannigan is  "wages" within the meaning of Labor Law §190(1).

70. Labor Law §191(1)(c) requires payment of "wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned . . . ."

71. Labor Law §191(3) provides that "[i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of  this section. If requested by the employee, such wages shall be paid by mail."

72. Despite the fact that Flannigan's employment was terminated on or about December

9, 2004, Graham, VCMI and VAMPS willfully failed and refused to pay Flannigan her sales commissions in the amount of $736,240.00, as listed above, and therefore willfully failed and refused to comply, *inter alia*, with Labor Law §191(1)(c) and 191(3).

73. Plaintiff demanded the commission she was entitled to and Graham willfully withheld and refused to pay the amount owed her.

74. Labor Law § 198(1-a), provides for an award to a prevailing employee, of reasonable attorneys fees and liquidated damages of 25% of wages owed for employer's willful non-payment of wages.

75. Accordingly, Graham owes Flannigan unpaid commission in the amount of $736,240.00, plus liquidated damages of 25% ($184,060.00), plus interest since December 9, 2004, plus reasonable attorney's fees, court costs, and disbursements.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DAVIS LIABILITY PURSUANT TO LABOR LAW §191(1)(c), §191(3) and §198(1-a)

76. At all relevant times, Davis, as an Officer of VCMI and Manager of VAMPS, had the power to hire and fire employees, including Flannigan.

77. At all relevant times, Davis, as an Officer of VCMI and Manager of VAMPS, supervised and controlled the conditions of employment, including those of Flannigan.

78. At all relevant times, Davis, as an Officer of VCMI and Manager of VAMPS, determined rates and methods of payment, including those of Flannigan.

79. At all relevant times, Davis, as an Officer of VCMI and Manager of VAMPS, maintained–either directly or indirectly–employment records, including those of Flannigan.

80. Davis, as an Officer of VCMI and Manager of VAMPS, willfully made the decision to refuse to pay Flannigan the commissions that she earned from November 2003 through December 2004.

81. At all relevant times, therefore, Davis was plaintiff's "employer" within the meaning of §190(3) of the Labor Law in that he (a) had the power to hire and fire employees, (ii) supervised and controlled the conditions of employment, (iii) determined rates and methods of payment, and

(iv) maintained employment records.  See, e.g., Chu Chung v. The New Silver Palace Restaurant, Inc., 272 F. Supp. 2d 314, 318–19 (SDNY 2003).

82. At all relevant times, therefore, Flannigan was an "employee" and "commission salesman" employed, *inter alia*, by Davis within the meaning of §190(2) and §190(6) of the Labor Law.

83. The commission owed to Flannigan is "wages" within the meaning of Labor Law §190(1).

84. Labor Law §191(1)(c) requires payment of "wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned . . . ."

85. Labor Law §191(3) provides that "[i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section. If requested by the employee, such wages shall be paid by mail."

86. Despite the fact that Flannigan's employment was terminated on or about December 9, 2004, Davis, VCMI and VAMPS willfully failed and refused to pay Flannigan her sales commissions in the amount of $736,240.00, as listed above, and therefore willfully failed and refused to comply, *inter alia*, with Labor Law §191(1)(c) and 191(3).

87. Plaintiff demanded the commission she was entitled to and Davis willfully withheld and refused to pay the amount owed her.

88. Labor Law § 198(1-a), provides for an award to a prevailing employee, of reasonable attorneys fees and liquidated damages of 25% of wages owed for employer's willful non-payment of wages.

89. Accordingly, Davis owes Flannigan unpaid commission in the amount of $736,240.00, plus liquidated damages of 25% ($184,060.00), plus interest since December 9, 2004,

plus reasonable attorney's fees, court costs, and disbursements.

WHEREFORE, Plaintiff hereby demands judgment against the Defendants, VULCAN POWER GROUP, L.L.C., AJAX CAPITAL, L.L.C., FORD F. GRAHAM and KEVIN C. DAVIS, as follows:

(A)    On the First Cause of Action a money judgment against defendant, VULCAN POWER GROUP, L.L.C., in the amount of $470,890.55, together with attorneys' fees pursuant to Debtor and Creditor Law §276-a, interest from September 10, 2009 and the costs of this action; and

(B)    On the Second Cause of Action a money judgment against defendants, VULCAN POWER GROUP, L.L.C., AJAX CAPITAL, L.L.C., FORD F. GRAHAM and KEVIN C. DAVIS, in the amount of $470,890.55, plus interest since September 10, 2009, plus court costs, and disbursements; and

(C)    On the Third Cause of Action a money judgment against defendant, FORD F. GRAHAM, in the amount of $736,240.00, plus liquidated damages of $184,060.00, plus reasonable attorney's fees, interest thereon from December 9, 2004, court costs and disbursements; and

(D)    On the First Cause of Action a money judgment against defendant, KEVIN C. DAVIS, in the amount of $736,240.00, plus liquidated damages of $184,060.00, plus reasonable attorney's fees, interest thereon from December 9, 2004, court costs and disbursements; and

(E)    Such other and further relief as the court may deem just and reasonable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by jury of all issues so triable.

Dated: New York, New York
       October 5, 2009

                                      Yours, Etc.,
                                      Stadtmauer & Associates

                              By:     _____
                                      Marc A. Stadtmauer (MS 5863)
                                      Attorneys for Plaintiff
                                           SUSAN FLANNIGAN
                                      230 Park Avenue, Suite 2525
                                      New York, New York 10169
                                      (212) 986-6200