UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
SUSAN FLANNIGAN,                         :
                                         :
                        Plaintiff,       :
                                         :
              v.                         :        09 Civ. 8473 (BSJ)
                                         :        **Opinion and Order**
VULCAN POWER GROUP, L.L.C.,              :
AJAX CAPITAL, L.L.C.,                    :
FORD F. GRAHAM, and KEVIN C. DAVIS,      :
                                         :
                        Defendants.      :
----------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

In this civil diversity proceeding, Susan Flannigan

("Plaintiff") brings an action against Vulcan Power Group, L.L.C.

("VPG"), Ajax Capital L.L.C. ("Ajax"), and Ford F. Graham

("Graham") (collectively "Defendants") for alleged violations of

the New York Labor Law, New York Debtor and Credit Law, and the

New York Business Corporations Law.  Plaintiff brings these

claims as a supplementary proceeding to a prior action in which a

settlement agreement was reached and a judgment entered in favor

of Plaintiff in the amount of $470,890.55.  See Flannigan v.

Vulcan Capital Mgmt., No. 05 Civ. 7404 (S.D.N.Y. Sept. 8, 2009)

(entering judgment in favor of Plaintiff).

Defendants move to dismiss the Amended Complaint in its

entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted, and as

to certain claims, for failure to meet the heightened pleading

1

requirements of Federal Rule of Civil Procedure 9(b).  For the reasons stated below, Defendants' 12(b)(6) Motion is DENIED as to the First, Third and Fifth causes of action in the Amended Complaint and GRANTED as to the Second cause of action.[1]

## BACKGROUND

This case arises out of the termination of Plaintiff's employment with Vulcan Capital Management, Inc. ("VCMI") and Vulcan Advanced Mobile Power Systems, L.L.C., also known as Vulcan AMPS ("VAMPS").  In April 2003, Graham and Kevin C. Davis ("Davis") met with Plaintiff to enlist her assistance in brokering several mobile power plants.  (See Flannigan v. Vulcan Capital Mgmt., No. 05 Civ. 7404 (S.D.N.Y. Aug. 22, 2005) ("2005 Compl.") ¶ 9; Am. Compl. ¶ 12.)  In August 2003, Plaintiff informed Graham and Davis that she had made contacts with Washington Group International ("WGI") for a potentially large purchase of mobile power plants to be used to supply the United States Government in restoring electrical power in Iraq. (Am. Compl. ¶ 13.)  On October 7, 2003, Davis sent Plaintiff an email offering her a 4% commission on the sale price if two or more power plants were eventually sold to WGI.  (Defs.' Mot. Ex. B.)

---

[1]     By Court Order dated October 30, 2009, this action is stayed as to Defendant Kevin C. Davis ("Davis") in light of a bankruptcy filing by Davis.  Thus, the instant opinion does not address the Fourth cause of action in the Amended Complaint, as it seeks relief only against Davis.

On October 17, VAMPS entered into a deal with WGI for WGI to purchase a number of mobile power plants.[2]

On October 30, 2003, Graham, acting on behalf of VAMPS, wrote two letters directing WGI to wire the initial payment of $22,281,000 to VPG "for the benefit of VAMPS."  (Am. Compl. ¶¶ 18-19; Pl.'s Opp'n Ex. B.)  From at least June 2004 to October 2004, Plaintiff and Graham were involved in email communication concerning Plaintiff's commission.  (Pl.'s Opp'n Ex. K.)  In March 2004, VAMPS paid plaintiff $125,000, but did not pay her the remaining total of $766,240, which she demanded based upon a 4% commission rate.  (Id.)  An email dated October 15, 2004 from Defendant Graham to Plaintiff stated, in apparent reference to Plaintiff's compensation: "I will honor our commitment as soon as we get the funding promised.  Keep the faith."  (Id.)

On August 22, 2005, Plaintiff brought suit for money damages against VCMI and VAMPS for unpaid commission wages on the sale that Plaintiff brokered between VAMPS and WGI.  (Am. Compl. ¶ 32.)  The parties settled out of court, and a judgment was entered on September 8, 2009 in favor of Plaintiff in the amount of $470,890.55.

---

[2]     WGI later reneged on its deal with VAMPS, refusing to purchase more than one mobile power plant.  WGI commenced arbitration against VAMPS before the American Arbitration Association, and ultimately agreed to abandon any claim to the $22,281,000 paid to VPG on behalf of VAMPS.  (See Pl.'s Opp'n Ex. D ("2004 Settlement Agreement").)

Claiming that the execution of judgment was returned unsatisfied due to the insolvency of VAMPS, Plaintiff now joins three additional defendants and alleges fraudulent conveyances of funds diverted from the original defendants' bank accounts. Plaintiff points to both the 2003 transfer of $22,281,000 from WGI to VAMPS and a second transfer for $600,000 in 2007 as proof of Defendants' intent to defraud her of compensation.[1] (Am. Compl. ¶¶ 90-94.) Defendants now move to dismiss the new claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991). The court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff. See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 515 (1972). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

---

[1]    The 2007 transfer involved a sale of a generator by VAMPS to BGT Group, Inc. Plaintiff alleges that the $600,000 paid for the generator was fraudulently diverted to VPG.

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  Instead, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1940 (2009).

In deciding a motion to dismiss under Rule 12(b)(6), the court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2nd Cir. 1993) (citation omitted); see also Hayes v. Coughlin, No. 87 Civ. 7401, 1991 WL 220963, at *1 (S.D.N.Y. Oct. 16, 1991) ("Papers outside a complaint may be incorporated by reference into the complaint when such papers are referred to within the body of the complaint.").

**DISCUSSION**

I.Fraudulent Conveyances

Defendants move to dismiss Plaintiff's First and Fifth causes of action relating to fraudulent conveyances, alleging that these claims are not sufficiently pled. The party asserting an intentional fraudulent transfer claim must "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid." United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002); accord Alnwick v. European Micro Holdings, Inc., 281 F. Supp. 2d 629, 646 (E.D.N.Y. 2003) (dismissing intentional fraudulent transfer claim that failed to identify the assets that were transferred and identified the date of the transfer as "on or about 2001"); see also Sullivan v. Kodsi, 373 F. Supp. 2d 302, 306 (Bankr. S.D.N.Y. 2005) (denying motion to dismiss intentional fraudulent transfer claims challenging non-specific transfers made to a family trust between late 1997 and June 2000 on the ground that the facts were "peculiarly within the opposing party's knowledge" and several "badges of fraud" were present).

Due to the inherent difficulty of proving actual intent to hinder, delay, or defraud creditors in support of fraudulent conveyance action under New York law, a plaintiff may rely on badges of fraud to support her case, including: (1) lack or inadequacy of consideration; (2) family, friendship, or close associate relationship between the parties; (3) retention of

possession, benefit, or use of the property in question by the debtor; (4) financial condition of transferor both before and after the transaction; (5) existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt; onset of financial difficulties, or pendency of threat of suits by creditors; and (6) general chronology of events or transactions." In re Kaiser, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

Under the facts of the instant case, Plaintiff has met her burden. Plaintiff alleges that VAMPS received no consideration for either of the two transfers that WGI was instructed to pay VPG. Plaintiff has alleged two specific transfers and has provided dates, amounts, account numbers and written authorizations signed by Defendants. Plaintiff contends that VAMPS was left insolvent by the transfers. Although the first transfer occurred in 2003, before the prior proceeding and before any settlement agreement, Plaintiff contends that she was owed a valid commission fee. If proven at trial, these facts are sufficient to state a claim for a conveyance "to hinder, delay, or defraud either present or future creditors." See N.Y. Debt. & Cred. Law § 276 (McKinney 2009). Additionally, the second alleged transfer took place in 2007, after the commencement of the prior litigation. If this second transfer occurred after Defendants became aware of the pending compensation claim, then

Plaintiff has stated a claim identifying a "business transaction" resulting in an "unreasonably small capital" for the debtor. N.Y. Debt. & Cred. Law § 275 (McKinney 2009).

Defendants also argue that both Claims One and Five, which allege actual fraud, are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff alleging fraud to state "the circumstances constituting fraud . . . with particularity." The particularity requirement for averments of fraud serves three functions: (1) enabling defendants to identify the allegedly fraudulent behavior in order to mount a defense with regard to those actions; (2) protecting defendants by prohibiting a complainant from making character-damaging allegations that have no basis in provable fact; and (3) reducing the number of strike suits. See Di Vittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). Accordingly, "[a]llegations of fraud cannot ordinarily be based upon information and belief. Instead, the complaint must specify the 'particulars' of the alleged fraud— including, for example, the time, place, particular individuals involved, and specific conduct at issue." United Feature Syndicate, 216 F. Supp. 2d at 221 (citing Luce v. Edelstein, 802 F.2d 49, 54 n.1 (2d Cir. 1986) (internal quotation omitted)).

As stated above, Plaintiff has met her burden for Rule 9(b) purposes. The Amended Complaint states the debt owed to

8

Plaintiff, the dates of the allegedly fraudulent transfers, the parties involved, relevant bank accounts, and amounts. Plaintiff has alleged that these transfers were made without consideration, and one or both could have occurred during the pendency of Defendants' debt obligation to Plaintiff.

Plaintiff has thus met the Rule 9(b) pleading requirements as to Claims One and Five. As both Claims One and Five state a claim upon which relief can be granted, they survive the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Joinder of Defendant Graham

Plaintiff also joins Graham personally under Labor Law §191(1)(c), §191(3) and §198(1-a), claiming that he was her employer and thus that he is liable for unpaid wages. New York Labor Law § 191(c) creates a private right of action against an employer who fails to pay wages to an employee, which includes commissioned salespersons. Section 190, in turn, defines an "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3) (McKinney 2009). Since VPG and AJAX are both limited liability companies, their corporate officers can come within this definition if they are proven to be Plaintiff's employers. See Lauria v. Heffernan, 607 F. Supp. 2d 403, 408-09 (S.D.N.Y. 2009) (holding that corporate officers and principal shareholders

may be liable for unpaid wages if found to be "employers" under Labor Law § 190(3)).

Under both the Fair Labor Standard Act and the New York Labor Law, the existence of an employer/employee relationship can be determined based on various factors, including whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. Of these, no single factor is dispositive. Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327 (S.D.N.Y. 2005) (citing Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)).

Defendants claim that Graham cannot be joined because he is not a named party in the 2003 email between Davis and Plaintiff. (Defs.' Mot. at 21.) This is not dispositive, however, as Plaintiff has also claimed that Graham was an officer of VCMI and a manager of VAMPS, that he met with her in 2003 to discuss the terms of her employment, and that he negotiated the transaction that gave rise to this case. (Am. Compl. ¶¶ 5, 7, 12-15.) Plaintiff has also provided documentary evidence, via emails, that Graham was in contact with her regarding her unpaid compensation. (Pl.'s Opp'n Ex. K.) Because of these factors, this Court finds Defendants' claim that Plaintiff does not have an enforceable contract right against Graham unpersuasive. See

Chu Chung v. New Silver Palace Restaurants, Inc., 272 F. Supp. 2d
314 (S.D.N.Y. 2003) (holding that corporate officers can still be
personally liable for unpaid wages as employers even if they
would not be liable as principal shareholders under Business
Corporations Law).

Therefore, because Claim Three states a claim upon which
relief can be granted, Defendants' motion to dismiss pursuant to
Rule 12(b)(6) is denied.

### III. Judicial Estoppel

Defendants also claim that Plaintiff is judicially estopped
from adding Graham as a party because she pled an inconsistent
position in the prior proceeding.  The purpose of the doctrine of
judicial estoppel is to "preserve the sanctity of the oath by
demanding absolute truth and consistency in all sworn positions"
and to "protect judicial integrity by avoiding the risk of
inconsistent results in two proceedings."  Sea Trade Co. Ltd. v.
FleetBoston Fin. Corp., No. 03 Civ. 10254, 2008 WL 4129620, at *5
(S.D.N.Y. Sept. 4, 2008) (quoting Bates v. Long Island R.R. Co.,
997 F.2d 1028, 1037 (2d Cir. 1993)).  Therefore, "[c]ourts
frequently invoke judicial estoppel to prevent a party who failed
to disclose a claim in bankruptcy proceedings from asserting that
claim in a subsequent action."  Sea Trade, 2008 WL 4129620, at
*5.  There are two elements of judicial estoppel: "First, the
party against whom the estoppel is asserted must have argued an

11

inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the court in some manner."   Bates, 997 F.2d at 1038.

There is no argument for judicial estoppel here.   Plaintiff did not argue an inconsistent claim in the prior proceeding.   She previously claimed that VAMPS and VCMI were her employers. Having received an unsatisfied execution on her settlement, she now joins Defendants Graham and VPG (and VPG's creditor, AJAX). She further claims that Graham allegedly transferred funds to VPG in violation of the law.   The absence of Graham as a defendant in the prior proceeding in no way amounted to a statement by Plaintiff that VAMPS and VCMI were her exclusive employers.

Therefore, Defendants' motion to dismiss Graham as a defendant by reason of judicial estoppel is also denied.

## IV.   Business Corporations Law Claim

Plaintiff claims that Defendants' conduct also violates Section 630 of the Business Corporations Law ("BCL"), which provides a procedure by which an employee may seek to hold the ten largest shareholders of a corporation personally liable for unpaid wages.   This claim need not be discussed any further because Section 630 does not apply to foreign corporations such as VAMPS, VCMI, VPG or Ajax.   See Armstrong v. Dyer, 268 N.Y. 671 (1935).   Although Plaintiff argues that the statutory language in the definitions section of BCL § 103(a) provides that the statute

12

also encompasses foreign corporations, it is nonetheless evident

that "a federal court sitting in diversity must apply the law of

the forum state and it must defer to the voice of that state's

highest court-however antiquated its view of the law may seem."

Levesque v. Kelly Commc'ns, Inc., No. 91 Civ. 7045, 1993 WL 22113

(S.D.N.Y. Jan. 25, 1993) (affirming Armstrong despite Plaintiff's

contentions that the relevant precedent was outdated); see also

Seghers v. Thompson, No. 06 Civ. 308, 2006 WL 2807203 (S.D.N.Y.

Sept. 27, 2006); Stuto v. Kerber, 888 N.Y.S.2d 872, 874-75 (N.Y.

Sup. Ct. 2009) (analyzing the language of the Business

Corporations Law to conclude that "while the BCL applies to both

domestic and foreign corporations, the use of the term

'corporation' in BCL § 630 plainly limits its ambit to domestic

corporations").  Therefore, Plaintiff's BCL § 630 claim is

dismissed in its entirety against all Defendants.

## CONCLUSION

For the reasons stated above, Defendant's 12(b)(6) Motion is

DENIED as to the First, Third and Fifth causes of action in the

Amended Complaint and GRANTED as to the second cause of action.

**SO ORDERED:**

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:    New York, New York
          April 27, 2010