

14-4444
*Flannigan v. Vulcan Power Group LLC*

N.Y.S.D. Case #
09-cv-8473(LAP)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of March, two thousand sixteen.

PRESENT:
>ROBERT A. KATZMANN,
>>*Chief Judge*,
>RALPH K. WINTER,
>JOHN M. WALKER, JR.,
>>*Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 06, 2016

SUSAN FLANNIGAN,

>*Plaintiff-Appellee*,

v.   No. 14-4444

VULCAN POWER GROUP, LLC, FORD F. GRAHAM, VULCAN CAPITAL, LLC,

>*Defendants-Appellants*,

AJAX CAPITAL, LLC, KEVIN C. DAVIS,

>*Defendants.**

---

* The Clerk of the Court is directed to amend the caption to conform with the above.

1       1

MANDATE ISSUED ON 04/06/2016

———————————————————————

| | |
|---|---|
| FOR PLAINTIFF-APPELLEE: | MARC A. STADTMAUER, Stadtmauer & Associates, New York, NY |
| FOR DEFENDANTS-APPELLANTS: | WILLIAM COUDERT RAND, New York, NY |

Appeal from an order of the United States District Court for the Southern District of New York (Preska, *C.J.*)

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Defendants Vulcan Power Group, LLC, Vulcan Capital, LLC, and Ford F. Graham appeal from a judgment of the United States District Court for the Southern District of New York (Preska, *C.J.*), entered on October 29, 2014, following a three-day jury trial, for violations of Sections 191, 198, and 215 of the New York Labor Law. We assume the parties' familiarity with the facts, procedural history, and issues presented on appeal.

This dispute arises from the sale of a mobile power generator (the "Vulcan Amps Unit") by non-party Vulcan Amps, LLC to a government contractor, Washington Group International ("WGI"), for use in restoring electricity service to Iraq shortly after the United States invasion in 2003. Vulcan Amps is a subsidiary of defendant Vulcan Power Group, LLC, which is itself a subsidiary of defendant Vulcan Capital, LLC, which is jointly owned by defendant Kevin Davis[1] and a trust for the benefit of defendant Ford Graham's children. Graham also serves as an officer of Vulcan Amps, Vulcan Power Group, and Vulcan Capital.

---

[1] The action was stayed as to Davis because he is in bankruptcy proceedings. He is not a party to this appeal.

Plaintiff Susan Flannigan alleges that the defendants employed her as a sales representative and promised to pay her a 4% commission for brokering the sale of the Vulcan Amps Unit. She alleges that they failed to pay the commission, in violation of Sections 191 and 198 of the New York Labor Law (the "wage claim"). She further alleges that the defendants, in retaliation for bringing this lawsuit, filed meritless counterclaims accusing her, *inter alia*, of breaching her duty of loyalty, and that they issued harassing subpoenas to her clients, all in violation of Section 215 of the New York Labor Law (the "retaliation claim"). Following a three-day trial, the jury found the defendants liable on both claims, and it awarded $766,240 in compensatory damages on the wage claim as well as $300,000 in compensatory and $900,000 in punitive damages on the retaliation claim. The district court added $191,560 in liquidated damages to the judgment pursuant to Section 198(1-a) of the New York Labor Law.

### I. Evidentiary Issues

The defendants challenge two of the district court's evidentiary rulings. We review such claims for abuse of discretion and will not reverse unless the district court's decision is "manifestly erroneous." *Davis v. Velez*, 797 F.3d 192, 201 (2d Cir. 2015). First, the defendants argue that the district court abused its discretion by excluding evidence of Flannigan's alleged disloyal acts insofar as they did not relate to the WGI transaction. In excluding this evidence, the district court relied on *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 205–07 (2d Cir. 2003) (per curiam), which held that although a disloyal agent forfeits compensation earned in connection with tasks as to which she was disloyal, she is entitled to retain compensation earned in connection with tasks as to which she was loyal. The defendants cite no authority or record evidence establishing that the district court's decision was manifestly erroneous.

Second, the defendants argue that the district court abused its discretion by excluding the testimony of Scott Campell, an officer of Vulcan Amps, who they claim would have testified that

3

Graham did not dominate the company. However, as the district court found, the defendants failed to disclose Campbell as a witness until the eve of trial, ignoring a discovery request for identification of witnesses, and Flannigan had no opportunity to depose him. In addition, the district court correctly noted that Campbell worked in a different office from Flannigan and that the defendants had proffered two other witnesses to testify about the same topic. Accordingly, the district court did not abuse its discretion by excluding Campell's testimony on the grounds that he had not been timely disclosed, that he lacked personal knowledge, and that his testimony was cumulative.

## II. Jury Instructions

The defendants argue, for the first time on appeal, that the district court erred by instructing the jury to determine liability for breach of contract, when Flannigan had not asserted a claim for breach of contract. Because they failed to object below, we review for plain error. *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013). Under this standard, the appellant must demonstrate that: "(1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights . . .'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). In order for an error to affect the defendants' "substantial rights," it "must be 'prejudicial,' which means that there must be a reasonable probability that the error affected the outcome of the trial.'" *Id.* at 139 (quoting *Marcus*, 560 U.S. at 262).

Here, any error did not affect the defendants' substantial rights. The district court was correct that Flannigan had to prove a contractual right to the commission to prevail on the wage claim. *See Simas v. Merrill Corp.,* No. 02-cv-4400 (KTD), 2004 WL 213013, at *2 (S.D.N.Y. Feb. 4, 2004) ("Failure to establish a contractual right to wages necessarily precludes a statutory claim

4

Case 1:09-cv-08473-LAP Document 207 Filed 04/06/16 Page 5 of 10

under New York labor law."). Because the jury explicitly found that Flannigan was contractually entitled to the commission, that Graham and Vulcan Power Group were her employers, and that they willfully breached their contractual obligations, there is no reason to believe that a different instruction would have altered its verdict.

### III. Miscellaneous Arguments

The defendants argue that Flannigan's claims were barred by *res judicata* based on a previous settlement agreement between Flannigan, Vulcan Amps, and another non-party. *Res judicata* is an affirmative defense that must normally be pleaded in a timely manner, or it is waived. *See Curry v. City of Syracuse*, 316 F.3d 324, 330–31 (2d Cir. 2003); *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001). The defendants made no attempt to plead or prove a *res judicata* defense below, and they cite no authority or record evidence that would support one on appeal. Accordingly, we see no reason to disturb the district court's judgment on *res judicata* grounds.

The defendants also argue, for the first time on appeal, that "commissions" do not constitute "wages" within the meaning of the New York Labor Law. But Section 190(1) of the Labor Law expressly defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, *commission* or other basis." N.Y. Lab. Law § 190(1) (emphasis added). Furthermore, the New York Court of Appeals has made clear that "a 'commission' is considered a 'wage' under section 190(1) of the Labor Law." *Pachter v. Bernard Hodes Grp., Inc.*, 891 N.E.2d 279, 616–17 (N.Y. 2008). Accordingly, this argument has no merit.

## IV. Sufficiency of the Evidence

The defendants' remaining claims are best construed as challenges to the sufficiency of the evidence. It is well established that "a party is not entitled to challenge on appeal the sufficiency of the evidence to support the jury's verdict on a given issue unless it has timely moved in the district court for judgment as a matter of law on that issue." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998). The defendants failed to do so here. Nonetheless, we may exercise our discretion to consider the issue if necessary to prevent "manifest injustice." *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119 (2d Cir. 2004). "[T]he circumstances normally 'do not militate in favor of an exercise of discretion to address . . . new arguments on appeal' where those arguments were 'available to the [parties] below' and they 'proffer no reason for their failure to raise the arguments below.'" *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (per curiam) (quoting *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006)).

The defendants argue that the evidence was insufficient to support the jury's finding that Flannigan was an "employee" of Vulcan Amps at the time she earned her commission. To prevail on a claim under Section 191 of the New York Labor Law, "a plaintiff must first demonstrate that he or she is an employee entitled to its protections." *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (quoting *Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr., Inc.*, 687 N.Y.S.2d 667, 669 (2d Dep't 1999)). Here, the evidence showed that Flannigan became a full-time employee of Vulcan Amps during the same period in which the company was negotiating and closing the WGI deal. Therefore, the jury's verdict is not manifestly unjust.

Second, the defendants argue that the evidence was insufficient to impose personal liability on Graham either because he was not a party to the commission agreement, or because he was acting in his capacity as a corporate officer. However, the New York Labor Law permits

6

employees to sue individual corporate officers in their capacity as "employers" within the meaning of Section 190. *See Chung v. New Silver Palace Rests., Inc.*, 272 F. Supp. 2d 314, 318 (S.D.N.Y. 2003); *see also Cohen v. Finz & Finz, P.C.*, 16 N.Y.S.3d 70, 72 (2d Dep't 2015) (holding that plaintiff stated claim against defendant "in his or her distinct capacity as the plaintiff's employer within the meaning of the Labor Law"). Whether an individual qualifies as an employer depends on whether "the particular defendant had the power to hire and fire employees," whether "he supervised and controlled the conditions of employment," and whether "he determined rates and methods of payment, and the like." *Chung*, 272 F. Supp. 2d at 318.

Here, Graham admitted that he had the power to hire and fire Flannigan and the authority to supervise her. Flannigan also introduced testimony from a former Vulcan Amps officer that Graham "controlled the purse strings and controlled how [the company] operated on a day-to-day basis." App. 251. In light of this evidence, the jury's finding that Graham was Flannigan's employer was not manifestly unjust.

Third, the defendants argue that the evidence was insufficient to prove that Vulcan Power Group was Flannigan's employer within the meaning of the Labor Laws, contending that she was in fact employed by Vulcan Amps.[2] However, an entity may be a "joint employer" under the Labor Law, depending on "the circumstances of the whole activity, viewed in light of economic reality." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003) (citation and quotation marks omitted) (discussing meaning of "joint employer" within meaning of the Fair Labor Standards Act ("FLSA")); *see also Chen v. Street Bear Sportswear, Inc.*, 364 F. Supp. 2d 269, 278 (E.D.N.Y.

---

[2] The defendants also argue that the evidence was insufficient to prove that Vulcan Capital was Flannigan's employer. However, the jury was not asked to make any finding about Vulcan Capital's status as Flannigan's employer, and the district court did not enter judgment against Vulcan Capital on the wage claim. Accordingly, we do not address this aspect of the defendants' argument.

7

2005) ("[T]he New York Labor Law embodies the same standards for joint employment as the FLSA."). Here, the evidence showed that Vulcan Power Group owned the Vulcan Amps Unit at the time Flannigan brokered the sale, and WGI tendered payment to Vulcan Power Group, not to Vulcan Amps. Moreover, Vulcan Amps and Vulcan Power Group operated out of the same office, shared at least one administrative employee, and were both controlled by Graham. Accordingly, the jury's finding that Vulcan Power Group was Flannigan's employer was not manifestly unjust.

Fourth, the defendants argue that the evidence was insufficient for the jury to find that Flannigan earned the commission, because the commission agreement required her to sell two Amps units and she sold only one. Their argument is based on the October 7, 2003 email from Davis to Flannigan, which states:

> I wanted to confirm that should Vulcan AMPS or any of its affiliates be successful with its current initiative to sell the Washington Group International ("WGI") AMPS units, the commission on the first two AMPS units to due to you will be 4% of the sales price of these AMPS units…. [T]o the extent we are successful in selling non-AMPS equipment to WGI, … we will pay an additional commission on those items under a different commission schedule.

App. 619. The most reasonable reading of this email is that the 4% commission applies to the first two units, regardless of whether one or two are sold, and that a different rate would apply to any additional units sold. In addition, both Flannigan and O'Hare testified that the parties understood at the time that the 4% commission would apply regardless of whether one or two units were sold. Therefore, no manifest injustice occurred.

Finally, the defendants challenge, again for the first time on appeal, the sufficiency of the evidence supporting various aspects of the damages award. The defendants contend that Flannigan's compensatory damages on the wage claim should have been calculated as 4% of $14,481,000, which they contend was the true sale price of the Vulcan Amps Unit, rather than as 4% of the approximately $22 million that Vulcan Amps received from WGI. However, Vulcan

8

Amps ultimately retained the full $22 million as a lump sum pursuant to a settlement agreement with WGI. The record does not permit us to determine whether any portion of the $22 million was designated for some purpose other than purchase of the Vulcan Amps Unit. Under these circumstances, it was not manifestly unjust for the jury to calculate the commission based on the total payment that Vulcan Amps received from WGI as a result of Flannigan's efforts.

The defendants also challenge the jury's award of compensatory and punitive damages on Flannigan's retaliation claim. With respect to compensatory damages, they contend that Flannigan failed to present any evidence that the allegedly retaliatory counterclaims actually damaged her business. However, Flannigan testified that the subpoenas caused her clients to "ask[] what is this all about," which "did affect [her] business" and "painted [her] out to look like a bad person." App. 325–26. In addition, she testified that she had to "go in and explain [herself]" to her clients, who wanted to know why she "was involved in this litigation" and asked her "why is this Vulcan disrupting our business." App. 387. She testified that this was "awkward," "upsetting," and "very damaging." App. 387. It was not manifestly unjust for the jury to infer that Flannigan's business suffered as a result of the defendants' retaliatory actions.

With respect to punitive damages, the defendants argue that the jury's award of $900,000 was grossly excessive. Under New York law, "the standard for conduct warranting an award of punitive damages 'has been variously described but, essentially, it is conduct having a high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 127 (2d Cir. 2013) (quoting *Home Ins. Co. v. Am. Home Prods. Corp.*, 550 N.E.2d 930, 934 (N.Y. 1990)). Courts have a duty "to keep a verdict for punitive damages within reasonable bounds considering the purpose to be achieved as well as the *mala fides* of the

defendant in the particular case." *Nellis v. Miller*, 477 N.Y.S.2d 72, 74 (4th Dep't 1984) (quoting *Faulk v. Aware, Inc.*, 244 N.Y.S.2d 259, 266 (1st Dep't 1963)) (reducing punitive damages award from $100,000 to $15,000). In this case, the defendants' egregious conduct and malicious abuse of the judicial process fully supported the jury's award of punitive damages.

We have considered all of the defendants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit